UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Brian Keith Edwards,

Petitioner,

vs.

Joan Fabian,

Respondent.          Civ. No. 07-3138 (JNE/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Petitioner's Application for Habeas Corpus relief, under Title 28 U.S.C. §2254. See Docket No. 1. The Petitioner appears pro se, and the Respondent appears by Linda M. Freyer, Assistant Hennepin County Attorney. For reasons which follow, we recommend that the Petition for a Writ of Habeas Corpus be dismissed.

II.  <u>Factual and Procedural Background</u>[1]

In the early morning hours of January 28, 2004, Timothy Oliver ("Oliver") was fatally shot in the 2100 block of Elliot Avenue, in south Minneapolis.  At the time of the shooting, the Petitioner was seated in the driver's seat of a Dodge Caravan, and Oliver was outside the vehicle near the front passenger window.  The Petitioner denied being present at the shooting, when he was initially questioned by police officers, and he subsequently admitted to shooting Oliver, but he claimed that Oliver shot first.

The Petitioner was indicted by a Grand Jury on one Count of first-degree premeditated murder, in violation of Minnesota Statutes Section 609.185(a)(1), and one Count of intentional drive-by shooting murder, in violation of Minnesota Statutes Section 609.185(a)(3).  At the Trial, the owner of the van, Johnny Joshua ("Joshua") testified that, on the day of the shooting, he had agreed to let the Petitioner use his vehicle in exchange for some crack cocaine, and that he sat in the back of the van smoking crack, while the Petitioner drove around attempting to sell drugs.  Later in

---

[1]The following summary of facts is based primarily on the published opinion of the Minnesota Supreme Court, in <u>State v. Edwards</u>, 717 N.W.2d 405 (Minn. 2006), and the "Statement of Facts" set forth in the Petitioner's Brief in support of his direct appeal to the Minnesota Supreme Court.  See, <u>Docket No. 8</u>, "Appendix," at "Appellant's Brief."

the day, Joshua and the Petitioner picked up the Petitioner's fiancée, Satociaree Wilson ("Wilson"), and a friend, who were passengers in the van at the time of the shooting.

As the Petitioner drove the van down Franklin Avenue, he passed Oliver, and Cordale Moore ("Moore"), who were walking on the sidewalk, and Wilson told the Petitioner that Oliver had previously threatened to shoot her.  Moore testified that, as the Petitioner drove by, he gave Oliver and Moore an intimidating glance, and then pulled over so that Oliver and Moore walked by the van one block later.  Oliver and Moore got into a car, and eventually, the van driven by the Petitioner, and the car carrying Oliver, met near the intersection of 21st Street and Elliot Avenue.  The cars stopped near each other, and the Petitioner and Oliver exchanged words.  Joshua testified that the Petitioner told Oliver, in an urgent voice, that he needed to talk to him, and a witness in Oliver's car stated that he heard the Petitioner say something about "spraying the mother f*ckers."  In contrast, Moore stated that the Petitioner asked Oliver, in a normal tone of voice, why Oliver was spreading a rumor that the Petitioner wanted to shoot Oliver and, when Oliver replied "that's what it seems like," the Petitioner replied, in an apologetic voice, that he would not do that to Oliver.

- 3 -

After the exchange, the Petitioner drove to the end of the street and made a u-turn, while the car in which Oliver was riding backed into a driveway.  The Petitioner, who had a gun on his lap, pulled on a pair of gloves.  Joshua testified that he was afraid something was going to happen, and said to the Petitioner, "Please don't do this in my car."  While the Petitioner was turning the van around, Oliver walked to a white car owned by Moore, that was parked nearby, opened the passenger door, popped the hood, briefly went under it, and then closed the hood.  The Petitioner called out to Oliver, who approached the van on the passenger side.  All of the witnesses at Trial testified that they did not see anything in Oliver's hands as he approached the van.

When Oliver reached the van, he and the Petitioner had a short conversation.  According to Joshua, Oliver then stepped back from the passenger side window, and the Petitioner raised his gun, leaned over Wilson, who was sitting in the front passenger seat, and fired at Oliver.  The witnesses in the car, in which Oliver had been riding, testified that, after the Petitioner started shooting, Oliver stumbled back, pulled out a gun, and returned fire as the van sped off.  In contrast, the Petitioner testified that, before he shot Oliver, he saw him step back from the passenger window of the van, and heard him cock a gun, and therefore, he shot Oliver to avoid being killed, and did not attempt to drive away, prior to the shooting, because he thought that Oliver

would shoot him in the back of the head.  According to the Petitioner, Oliver fired the

first shot.  After the Petitioner left the scene, Oliver was taken to the hospital by the

occupants of the car he had been riding in, and he was pronounced dead from a

gunshot wound to the chest.

At the Petitioner's Trial, the State called William James ("James") as an expert

witness.  James, who is a forensic scientist with the Minneapolis Police Department,

testified that he had examined the van, and had used "trajectory rods" to map the path

that had been taken by each of the twelve (12) bullets that Oliver fired into the vehicle.

As noted by the Minnesota Supreme Court, James testified that, by using the trajectory

rods, he could determine "(1) 'somewhat the distance, possibly, that somebody was

standing from the vehicle,' (2) 'whether or not the vehicle or the person, the shooter,

was in motion,' and (3) the 'approximate angle and direction of those fired bullets.'"

Id.  The Minnesota Supreme Court reproduced the testimony, which arose during the

State's redirect examination of James, as follows:

> Q:     Were any of those --- well, and if the person who
> was firing the bullets, based on your analysis and you [sic]
> observations and your training, the person firing those
> bullets into the van were wanting to strike either the front
> passenger or the driver, were any of those bullets in the
> direction or the angle would be even remotely likely to hit
> those two individuals?

- 5 -

> [Defense Attorney]:        Objection, Your Honor. Calls for speculation.  Lack of Foundation.
>
> [The Court]:        Overruled.  You can answer, if you can.
>
> A:    If I was intent on shooting the passenger or the driver, the bullets would be much higher, the bullet strikes would be much higher.  They would be at least pointed towards, you know, the level of the window.

State v. Edwards, 717 N.W.2d 405, 409 (Minn. 2006).

Over the Petitioner's objection, at the close of the Trial, the Court instructed the Jury

on an aggressor's right to claim self-defense.  The Court drew the language for that

instruction from CRIMJIG 7.07, which states as follows:

> If the defendant began or induced the incident that led to the necessity of using force in the defendant's own defense, the right to stand the defendant's ground and thus defend himself is not immediately available to him.  Instead, the defendant must first have declined to carry on the affray and have honestly tried to escape from it, and must clearly and fairly have informed the adversary of a desire for peace and  of abandonment  of the contest.    Only after the defendant has done that will the law justify the defendant in thereafter standing his ground and using force against the other person.

Minnesota Practice-Jury Instruction Guides, Criminal, CRIMJIG 7.07.

The Jury returned a not guilty Verdict as to the charge of first-degree premeditated

murder, but found the Petitioner guilty of first-degree intentional murder while

committing a drive-by shooting.  The Petitioner was given a life sentence, and he is

currently serving his sentence at the Minnesota Correctional Facility, in Stillwater, Minnesota.

Following his conviction, the Petitioner filed a direct appeal to the Minnesota Supreme Court, in which he argued that: 1) the Trial Court erred when it admitted opinion testimony by James; and 2) there was no evidence to support the inclusion of CRIMJIG 7.07 as part of the Jury Instructions. See, <u>State v. Edwards</u>, supra at 409-10. The Minnesota Supreme Court rejected both of the Petitioner's claims on their merits, and affirmed his conviction. <u>Id.</u> at 414. Following that unsuccessful direct appeal, on March 5, 2007, the Petitioner filed a Petition for Post-Conviction relief in the Hennepin County District Court, in which he asserted that his conviction was barred by the double jeopardy clause of the Fifth Amendment to the United States Constitution. See, <u>Administrative Record</u>, <u>Docket No. 8</u>. By Order dated May 17, 2007, the Hennepin County District Court denied the Petition without a Hearing. <u>Id.</u>

In his current Federal Habeas Petition, which he filed on June 28, 2007, the Petitioner raises the following grounds for Habeas relief: 1) that the "[a]dmission of Forensic Scientist testimony on the likelihood that bullets fired into a vehicle would hit the vehicle's occupants was an [abuse] of Discretion;" and 2) that the "[s]ubmission of Jury instruction on an Aggressor's right to a claim of Self-Defense"

was also in error, which are the same two (2) grounds for relief that the Petitioner had previously raised in his appeal to the Minnesota Supreme Court. See, Petition, Docket No. 1. In response, the Respondent requests dismissal of the Petition for two (2) reasons: 1) the Petitioner failed to properly present a Federal claim to the Minnesota Supreme Court; and 2) the Petitioner's claim fails on its merits. See, Respondent's Memorandum, Docket No. 6, pp. 25-26, and 31-32.

### III.  Discussion

A.    Exhaustion and Procedural Default.

1.    Standard of Review. It is well-established that a Federal Court will not entertain a Petition for a Writ of Habeas Corpus on behalf of a State prisoner unless the prisoner has first exhausted all available State Court remedies. See, Title 28 U.S.C. §2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Rose v. Lundy, 455 U.S. 509 (1982); see also, Armstrong v. State of Iowa, 418 F.3d 924, 925-26 (8th Cir. 2005), cert. denied, 546 U.S. 1179 (2006)("Federal habeas relief is available to a petitioner after he 'has exhausted the remedies available in the courts of the State.'"), quoting Title 18 U.S.C. §2254(b)(1)(A). The exhaustion of State remedies requirement is based on principles of comity and federalism, as its purpose is to ensure that State Courts are given the first opportunity to correct alleged Federal

constitutional errors raised by State prisoners.  See, O'Sullivan v. Boerckel, supra at 844; Duncan v. Henry, 513 U.S. 364, 365-66 (1995); Rose v. Lundy, supra at 518-19; Curtiss v. Mount Pleasant Correctional Facility, 338 F.3d 851, 55 (8th Cir. 2003), cert. denied, 540 U.S. 1060 (2003)("The exhaustion requirement serves AEDPA's goal of promoting 'comity, finality, and federalism,' by giving state courts 'the first opportunity to review [the] claim,' and to 'correct' any 'constitutional violation in the first instance.'"), quoting Carey v. Saffold, 536 U.S. 214, 220 (2002).

In order to exhaust his State Court remedies, a prisoner must fairly present his constitutional claims to the highest available State Court before seeking relief in Federal Court.  See, O'Sullivan v. Boerckel, supra at 845; Duncan v. Henry, supra at 365-66; see also, Dixon v. Dormire, 263 F.3d 774, 777 (8th Cir. 2001); McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997)("[B]efore we may reach the merits of a habeas petition, we must first determine whether the petitioner has fairly presented his federal constitutional claims to the state court.").  The exhaustion of State remedies requires more than the fact that the Federal Habeas applicant has been through the State Courts.  See, Picard v. Connor, 404 U.S. 270, 275 (1971).

To serve the purposes of the rule, the State Courts must have the first opportunity to hear the claim, which is sought to be vindicated in a Federal Habeas

proceeding.  Id. at 275-76.  The State Court has an opportunity to hear a claim, when the claim has been fairly presented, by reference to a specific Federal constitutional right, a Federal case, or a State case, which raises a pertinent Federal constitutional issue.  See, Cox v. Burger, 398 F.3d 1025, 1031 (8th Cir. 2005), cert. denied, 546 U.S. 844 (2005), quoting Barrett v. Acevedo, 169 F.3d 1155, 1161-62 (8th Cir. 1999), cert. denied, 528 U.S. 846 ( 1999); Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996), cert. denied, 517 U.S. 1215 (1996).  Claims are exhausted only when the same factual underpinnings, and legal theories, were first properly raised in the State Courts.  Id. "Presenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement." Id.; see also, Abdullah v. Groose, supra at 412, citing Duncan v. Henry, supra at 366.

Under Minnesota law, "[o]nce a defendant has taken a direct appeal, all claims raised in the direct appeal as well as 'all claims known but not raised' at the time of the direct appeal are barred from consideration in any subsequent petition for post-conviction relief." Cooper v. State, 745 N.W.2d 188, 190-91 (Minn. 2008), quoting State v. Knaffla, 243 N.W.2d 737, 741 (Minn. 1976).  If the Petitioner has failed to exhaust his State Court remedies, and if the Court to which he should have presented his claim would now find it procedurally barred, then the claim is procedurally

defaulted.  See, <u>Sloan v. Delo</u>, 54 F.3d 1371, 1381 (8th Cir. 1995), cert. denied, 516

U.S. 1056 (1996), citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 735 n.1 (1991).  In

addition, if a Petitioner has attempted to raise a claim in State Court, but the State

Court determines that the Petitioner has defaulted the claim under a State procedural

rule, Federal Courts will not, as a general proposition, consider the claim on Habeas

review.  See, <u>Coleman v. Thompson</u>, supra at 750; <u>Sloan v. Delo</u>, supra at 1378.

Accordingly, "[a] default under a state procedural rule bars consideration of a

federal claim presented to the state courts if the last state court to review the claim

specifically rested its decision on an adequate and independent state ground * * *."

<u>Sloan v. Delo</u>, supra at 1378, citing <u>Harris v. Reed</u>, 489 U.S. 255, 260-63 (1989).  A

claim that is procedurally defaulted under State law, however, is barred from Federal

review only if the State procedural rule is firmly established and regularly followed.

See, <u>Oxford v. Delo</u>, 59 F.3d 741, 744 (8th Cir. 1995), cert. denied, 517 U.S. 1124

(1996), citing <u>Ford v. Georgia</u>, 498 U.S. 411, 423-24 (1991); see also, <u>Harris v. Reed</u>,

supra at 262 ("[A]n adequate and independent finding of procedural default [as a

matter of State law] will bar federal habeas review of the federal claim.").

Although the State Court procedural bar is "nearly absolute," a Petitioner can

avoid the bar if he "demonstrate[s] cause for the default and actual prejudice as a

result of the alleged violation of federal law," or shows his actual innocence.  <u>Reagan v. Norris</u>, 279 F.3d 651, 656 (8th Cir. 2002), quoting <u>Coleman v. Thompson</u>, supra at 750.

   B.   <u>Legal Analysis</u>.  As stated, the Petitioner claims that his right to a fair Trial, and his right to Due Process, were violated, and seeks Habeas relief, on the following two (2) grounds: 1) that the Trial Court erred by admitting the opinion evidence of a forensic expert that implied that the Petitioner fired the first shot; and 2) that the Trial Court made a fundamental error by submitting a Jury Instruction regarding an aggressor's right to self-defense that was not supported by the evidence. The Respondent urges us to dismiss this matter because the Petitioner has failed to properly present a Federal claim or, in the alternative, she argues that the Petitioner's claim fails on its merits, since the Petitioner has failed to show that the decision of the State Courts was based on an unreasonable determination of the facts, in light of the evidence presented in the State Court proceeding.  We address each of the Petitioner's assertions in turn.

   1.   <u>Ground One:  The Admission of Expert Testimony Claim</u>.  In his brief in support of his Federal Petition, the Petitioner contends that the Trial Court's decision to allow James, as an expert forensic witness, to testify on the issue of intent

constituted a denial of his right to a fair Trial under the Sixth Amendment.  See, Petitioner's Response, supra at p. 15.  Specifically, he contends that the Trial Court erred when it ruled that the expert's statement was an opinion on a question of fact, which could be helpful to the Jury, and was admissible under Rule 701, Minnesota Rules of Evidence, and that the error was not harmless.

We begin our analysis by noting that the Petitioner's Brief to the Minnesota Supreme Court cites only to State case law, and makes no reference to Federal cases, a Federal constitutional right, or a Federal statutory right.  In Baldwin v. Reese, 541 U.S. 27, 30 (2004), the United States Supreme Court addressed the issue of fair presentation and held that, "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court decision, that does so."  Id. at 32.

While he is not required to have spelled out every nuance of his Federal constitutional claims to the Minnesota Supreme Court, the Petitioner does have to give fair notice that, indeed, there is a Federal constitutional dimension to his claims.  See, Duncan v. Henry, supra at 366 ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him due process of law guaranteed by

the Fourteenth Amendment, he must say so, not only in Federal Court, but in state court."); Johnson v. State of Minnesota, 2006 WL 2860817 *2-3 (D. Minn., October 4, 2006)(finding procedural default when petitioner cited only one State Court case, and failed to specify what Federal issues were relevant in Petition to Minnesota Supreme Court); Jones v. Jerrison, 20 F.3d. 849, 854 (8th Cir. 1994)("The federal legal theory or theories must plainly appear on the face of the petitioner's state-court briefs.").

"[F]ederal habeas corpus relief does not lie for errors of state law * * * [and] it is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions."  Evenstad v. Carlson, 470 F.3d 777, 782 (8th Cir. 2006), quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  "To obtain habeas relief, [the Petitioner] must be able to point to the Supreme Court precedent he thinks the Minnesota state courts acted contrary to or applied unreasonably."  Evenstad v. Carlson, supra at 783, citing Buchheit v. Norris, 459 F.3d 849, 853 (8th Cir. 2006); Owsley v. Bowersox, 234 F.3d 1055, 1057 (8th Cir. 2000), cert. denied, 534 U.S. 903 (2001).

We note that, in the final sentence of his Brief to the Minnesota Supreme Court, the Petitioner suggested that the admission of James' testimony "prejudiced [the

- 14 -

Petitioner's] right to a fair trial."  In a recent unpublished decision, <u>Thibodeau v. Carlson</u>, 2007 WL 4372960 at *8 (D. Minn., December 6, 2007), a Court in this District noted that the decision of the Supreme Court, in <u>Baldwin v. Reese</u>, supra, "suggested that a federal habeas petitioner could preserve a federal claim otherwise subject to a procedural bar if the state and federal claims are clearly identical."  In that case, the Court concluded that the petitioner had fairly presented his claim for ineffective assistance of counsel, as Minnesota Courts apply the same standard for that claim regardless of whether it was brought as a Federal or a State claim, and that the Minnesota Court of Appeals had addressed the petitioner's claim under both State and Federal law.  <u>Id.</u>; see also, <u>Brimmer v. Fabian</u>, 2006 WL 3804311 at *11 n.5 (D. Minn., December 26, 2006).

In contrast, here, the Petitioner's claim was based on the failure of the Trial Court to exclude expert testimony in alleged violation of the Minnesota Rules of Evidence, which is not addressed by State Courts pursuant to a parallel Federal standard.  Moreover, on review, the Minnesota Supreme Court apparently did not consider itself on notice of any possible Federal Constitutional claim in the Petition, and confined itself to the analysis of the petitioner's evidentiary claim, pursuant to State law.  Given the State law nature of the Petitioner's claim, and the argument set

forth in his briefing, we see no reason that the Minnesota Supreme Court could have surmised that the Petitioner was raising a Federal claim. Thus, we find that the Petitioner did not fairly present a Federal claim to the Minnesota Supreme Court, and turn our attention to the issue of exhaustion and procedural default.

We conclude that the Petitioner's claim, as to the admissibility of expert testimony, is procedurally defaulted, as State law would prevent him from raising that claim in State Court. See, Zenanko v. State, 587 N.W.2d 642, 644-45 (Minn. 1998) (Under Minnesota law, "[o]nce a defendant has had a direct appeal, 'all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for post-conviction relief.'"), quoting State v. Knaffla, supra at 741. Here, the Petitioner's evidentiary claim is nothing more than an improper attempt to re-litigate his Trial, see, McFarland v. Scott, 512 U.S. 849, 859 (1994) (holding that a criminal Trial is the "main event," and that the Habeas Writ should not be used to "re-litigate state trials"), and is precisely the type of issue that the United States Supreme Court has emphasized as not being an appropriate basis for Federal Habeas relief. See, Estelle v. McGuire, supra at 67-68. The Petitioner raised the same contentions on direct appeal and, in addressing the Petitioner's argument, the Minnesota Supreme Court reviewed the Record, under the legal standards necessary to admit expert

testimony under Rule 701.[2]  The Court weighed the Petitioner's claim, in light of

several cases that had been decided under Minnesota law, and concluded that the Trial

Court did not abuse its discretion in finding that James' testimony was admissible.

See, State v. Edwards, supra at 410 ("Although the question [to James] was poorly

worded, admission of the testimony was not an abuse of discretion.").

　　　Nothing in those arguments, nor the Record as a whole, provides any reason to

undermine the State Courts' resolution of the evidentiary claim.  Thus, the Petitioner

has not established that the Trial Court's decision to admit James' testimony was an

error so conspicuously prejudicial as to fatally infect his Trial, or deprive him of

fundamental fairness.  See, Maggit v. Wyrick, 533 F.2d 383, 385 (8th Cir. 1976), cert.

denied, 429 U.S. 898 (1976).

　　　A claim that has been procedurally defaulted in the State Courts will not be

entertained in a Federal Habeas proceeding, unless the petitioner has shown "cause

and prejudice" to excuse his procedural default or, in the alternative, that there would

be a "fundamental miscarriage of justice" if the Federal Court declined to consider the

---

[2]While a portion of Rule 701, Minnesota Rules of Evidence, parallels Rule 701, Federal Rules of Evidence, the Rules are not identical, and involve some different considerations, such as the prohibition, under the Federal Rule, of lay expert opinions that are "based on scientific, technical, or other specialized knowledge within the scope of Rule 702," Federal Rules of Evidence.

claim.  See, <u>Coleman v. Thompson</u>, supra at 750.  "It is well-established that federal courts will not address procedurally defaulted claims on the merits unless a petitioner can show either cause and prejudice to excuse the default or actual innocence." <u>Schliemann v. Fabian</u>, 2007 WL 1201621 at *3 (D. Minn., February 13, 2007), citing <u>Clemons v. Leubbers</u>, 381 F.3d 744, 750 (8th Cir. 2004); <u>Reagan v. Norris</u>, supra at 656; <u>Carney v. Fabian</u>, 441 F. Supp. 2d 1014, 1023 (D. Minn. 2006), citing <u>Coleman v. Thompson</u>, supra at 750.

The "fundamental miscarriage of justice" exception is available only upon a "showing, based on **new evidence**, that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" <u>Brownlow v. Groose</u>, 66 F.3d 997, 999 (8th Cir. 1995)[emphasis added], cert. denied, 516 U.S. 1161 (1996), quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995).  In other words, a petitioner cannot simply point to errors that allegedly occurred during the course of his criminal prosecution; he must, instead, offer some new evidence which affirmatively demonstrates that he is truly innocent of the crime for which he was convicted.

Here, the Petitioner has failed to proffer any **new** evidence that would require us to re-examine his case in order to avoid a fundamental miscarriage of justice, nor has he provided any cause, or prejudice, that would excuse his procedural default.  In

order to satisfy the "cause" requirement, a prisoner must show that some external

impediment prevented him from presenting his claims to the State's highest Court in

a timely, and procedurally proper manner.  See, <u>Coleman v. Thompson</u>, supra at 753

("'[C]ause' under the cause and prejudice test is something **external** to the petitioner,

something that cannot fairly be attributed to him * * *  [f]or example, 'a showing that

the factual or legal basis for a claim was not reasonably available * * *  or that some

interference by officials made compliance impracticable")[emphasis in original],

quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986).  The Petitioner has not identified

any "external cause" that could excuse his failure to present his defaulted claim.

Likewise, the Petitioner cannot satisfy the prejudice requirement, which would

require him to show, as follows:

> [T]he alleged misconduct not only created a possibility of
> prejudice, but that it worked to his actual and substantial
> disadvantage, thereby infecting the trial with constitutional
> error * * * [Citation omitted.]  The petitioner must also
> show, at the very least, that absent the alleged constitutional
> violation, there is a reasonable probability the outcome of
> the case would have been different.

<u>Nims v. Ault</u>, 251 F.3d 698, 702 (8th Cir. 2001), superseded on other grounds,
<u>Williams v. Norris</u>, 461 F.3d 999 (8th Cir. 2006); see also, <u>Ivy v. Caspari</u>, 173 F.3d
1136, 1141 (8th Cir. 1999)("To establish actual prejudice * * * [the petitioner] must
prove that 'but for the constitutional violations * * * he might not have been convicted
of the same crimes.'"), quoting <u>Easter v. Endell</u>, 37 F.3d 1343, 1347 (8th Cir. 1994).

The Petitioner argues that James' testimony interfered with the role of the Jury as the trier of fact, since it exposed the Jury to the speculative testimony of an expert that Oliver had been shot prior to returning fire, and was unable to successfully shoot either the Petitioner, or his passengers in the van, because he was falling down. See, Petitioner's Response, supra at p. 14.

However, the Petitioner testified at Trial that the entire shooting took place "pretty fast," and that, after Oliver stepped back from the passenger window, he heard Oliver cock his gun and, in reaction, he "grabbed [his] gun and * * * pulled the trigger." See, Appendix, supra, "Trial Transcript," at pages 1582-83; 1598. The Petitioner stated that he fired his gun once, and that he heard "pow, pow, pow, pow, pow," which he believed was the sound of multiple shots from Oliver's gun, and that he "heard the flash of the gun, [Oliver's] gun, and * * * pulled my trigger." Id. at 1583, 1598. According to the Petitioner, Oliver continued to fire his gun at the passenger side door of the van as the Petitioner drove away from the scene. Id. at 1584.

In addition, the Jury was aware that the gun shot that Oliver sustained was a serious one, as he died shortly thereafter. On this Record, we cannot find that a reasonable probability exists that the exclusion of James' testimony would have

resulted in the Petitioner's acquittal.    Instead, the Jury would most reasonably

conclude that, after Oliver fired the first shot, the Petitioner returned fire with one shot

that struck Oliver, and Oliver continued to fire at the van, which was driving away

from the scene, after he received the bullet that ultimately killed him.    Thus, James'

testimony would reflect the possibility that Oliver had been struck at least once prior

to firing at the van, which is supported by the Petitioner's own testimony.

Consequently, we find that the Petitioner has not met his burden of establishing

prejudice, and we recommend that Ground One of the Petition be dismissed.[3]

> 2.    <u>Ground Two:  The Jury Instruction Claim</u>.  As his second ground

for relief, the Petitioner argues that the State Courts violated his right to have a Jury

_____

[3]We note that in addition to being available in adjudications in which the Petitioner establishes that a State Court made a decision that was either contrary to, or involved an unreasonable application of, clearly established Federal law, a Writ of Habeas Corpus is also available in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.  <u>Title 28 U.S.C. §2254(d)</u>.  However, <u>Title 28 U. S.C. § 2254(e)(1)</u> retains a presumption of correctness for all purely factual determinations, which are rendered by a State Tribunal, and which can, as a result, only be rebutted by the production of clear and convincing evidence to the contrary.  See <u>Lupien v. Clarke</u>, 403 F.3d 615, 618 (8th Cir. 2005); <u>Green v. Norris</u>, 394 F.3d 1027, 1029 (8th Cir. 2005); <u>Kinder v. Bowersox</u>, 272 F.3d 532, 538 (8th Cir. 2001), citing <u>Title 28 U.S.C. §2254(e)(1)</u>.  In this case, in addition to failing to show that the State Court decision was contrary to or an unreasonable application of Federal law, the Petitioner has not attempted to introduce any evidence that would challenge the factual findings of the State Courts, and we thus this provision does not provide grounds to grant the Writ, as to Ground One.

determine whether the State had proved each element of the offense beyond a reasonable doubt by allowing an Instruction on an aggressor's right to self-defense. As with his evidentiary claim, the Petitioner did not allege any violation of Federal law in his arguments to the State Courts relating to the Jury Instruction claim, and consequently, we find that the State Courts were not fairly presented with a Federal Constitutional claim.  See, O'Sullivan v. Boerckel, supra at 845.  Thus, we turn to whether the Petitioner's claim, in Ground Two, is subject to procedural default.

As previously noted, to obtain Habeas relief, it is not enough for the Petitioner to argue that the Minnesota Supreme Court misapplied State law, as he "must be able to point to the Supreme Court precedent he thinks the Minnesota state courts acted contrary to or applied unreasonably."  Evenstad v. Carlson, supra at 783, citing Buchheit v. Norris.  The Minnesota Supreme Court did not rely on any Federal law in its decision on the Petitioner's Jury Instruction claim, and consequently, we find that the Petitioner cannot be claiming that the State Courts improperly applied Supreme Court precedent.  Instead, the Petitioner cites four (4) Supreme Court cases and, construing the Brief in support of his Petition generously, we understand that he alleges that the decision of the State Courts was contrary to the holdings in those cases.

First, the Petitioner cites Chapman v. California, 386 U.S. 18 (1967), Sandstrom v. Montana, 442 U.S. 510 (1979), and Rose v. Clark, 478 U.S. 570 (1986), for the general proposition that, "[w]hen a jury instruction is misleading or inaccurate [it] could never be harmless, and requires a new trial unless that reviewing court concludes beyond a reasonable doubt that the improper instruction had no significant impact on the verdict obtained." Petitioner's Response, Docket No. 10, at p. 3-5. In Chapman v. California, supra at 22-23, the Supreme Court was presented with a petitioner's argument that all Federal constitutional errors must be automatically found to be harmful. In rejecting that proposition, the Supreme Court concluded that "there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." Id. at 24. The Supreme Court held that, in such a case, in order to sustain the Verdict of a lower Court, the reviewing Court must find that any error was harmless beyond a reasonable doubt. Id.; see also, Neder v. United States, 527 U.S. 1, 7 (1999).

In Rose v. Clark, supra at 576, quoting Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986), the Supreme Court noted that, since its decision in Chapman v. California,

- 23 -

it had "repeatedly reaffirmed the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt."  In weighing the application of the harmless error test, the Supreme Court noted that, although a limited number of errors were so significant that they rendered a Trial fundamentally unfair, "if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis." Id. at 579.  The Court in Rose v. Clark, supra at 575-76, noted that its earlier decision in Sandstrom v. Montana, supra at 520, supported that conclusion.

In Sandstrom, supra at 512, the issue presented to the Supreme Court was whether a Jury Instruction, that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts" violated a petitioner's Due Process right to have the State prove every element of a crime beyond a reasonable doubt.  The Supreme Court, in Sandstrom, concluded that the contested instruction violated the petitioner's rights under the Fourteenth Amendment, as a reasonable Jury could have believed that the presumption on intent was not rebuttable by the petitioner, and that the instruction would be unconstitutional if it shifted either the burden of proof, or the burden of

persuasion to the petitioner, on any element of the crime with which he was charged. Id. at 521-24.

However, in Rose v. Clark, supra at 580, the Supreme Court reviewed the holding in Sandstrom in the context of a Jury instruction, and found that, "[w]hen the verdict of guilty reached in a case in which Sandstrom error was committed is correct beyond a reasonable doubt, reversal of the conviction does nothing to promote the interest that the rule serves." Thus, the Supreme Court has held that even an erroneous Jury Instruction, that impermissibly shifts the burden of proof, is "not 'so basic to a fair trial' that it can never be harmless." Id. at 580.

Here, the Minnesota Supreme Court reviewed the Petitioner's Jury Instruction claim under applicable State law, and determined that CRIMJIG 7.07 was a correct statement of law, and that the Trial Court had not erred in including the language from CRIMJIG 7.07 in the Jury Instructions. Although the Petitioner, in both his State and his Federal Petitions, argues that the first sentence of CRIMJIG 7.07 was unduly prejudicial, since it permitted the Jury to find that the Petitioner was the initial aggressor, merely because he started a conversation with Oliver, the Minnesota Supreme Court disagreed, and found that, read as a whole, the instruction

contemplated conduct that was "a great deal more than mere conversation." <u>State v. Edwards</u>, supra at 412.

In the alternative, the Minnesota Supreme Court noted that "[a]n error in jury instructions is harmless if is can be said beyond a reasonable doubt that the error had no significant impact on the verdict." <u>Id.</u> at 413, citing <u>State v. Olson</u>, 482 N.W.2d 212, 216 (Minn. 1992). Thus, the Court found that any error in submitting the Instruction to the Jury had been harmless, as the Verdict reflected that the Jury had found that the elements of self-defense had not been satisfied. <u>Id.</u> at 413. Specifically, the Court noted that "the central issues at trial were whether [the Petitioner] acted with premeditation or whether he acted as a reasonable person in using deadly force," and that intent to shoot was not seriously disputed. <u>Id.</u> at 414. As a result, the Court determined that the Jury's decision to acquit the Petitioner of premeditated murder, while convicting him of the drive-by shooting offense, showed that the Jury based its decision on its belief that he had not acted as a reasonable person in using deadly force, and consequently, submitting the Jury Instruction relating to an aggressor's right to self-defense was not prejudicial. <u>Id.</u>

We find that the Minnesota Supreme Court properly applied the <u>Crawford</u> reasonable doubt standard, and found that any error, in charging the Jury

with an instruction on an aggressor's right to self-defense, was harmless beyond a reasonable doubt.  See, <u>State v. Edwards</u>, supra at 413.  Although the Petitioner counters that the inclusion of the Jury Instruction on an aggressor's right to self-defense was not harmless since, he claims, the language misrepresented the facts of the case -- which did not establish that the Petitioner induced Oliver to pull out a weapon, and could have caused the Jury to believe that the Petitioner was the aggressor, see, <u>Petitioner's Response</u>, supra at p. 5 -- the Minnesota Supreme Court heard and rejected that same argument, on the Petitioner's direct appeal, and we find no error in the Court's analysis.

The Petitioner additionally cites <u>Bollenbach v. United States</u>, 326 U.S. 607, 614 (1946), to assert that guilt "must be found by a Jury according to the procedure and standards appropriate for criminal trials in the federal courts," and suggests that there is no evidence, in the Record, that establishes that the Petitioner was the initial aggressor, and forfeited the right to self-defense, and that, therefore, the Jury Instructions on self-defense were erroneously given.  In <u>Bollenbach</u>, supra at 615, the Supreme Court found that Jury Instructions which affirmatively misstated the law could not be considered to constitute harmless error.  However, in <u>Johnston v. Luebbers</u>, 288 F.3d 1048, 1052 (8th Cir. 2002), our Court of Appeals noted that the

holding in <u>Bollenbach</u> was limited to cases in which the challenged Jury Instructions affirmatively misstated the law.

As noted by the Minnesota Supreme Court, under Minnesota Statutes Sections 609.06 and 609.065, three (3) conditions must occur to excuse or justify the use of deadly force:

> (1)    The killing must have been done in the belief that it was necessary to avert death or grievous bodily harm.
>
> (2)    The judgment of the defendant as to the gravity of the peril to which he was exposed must have been reasonable under the circumstances.
>
> (3)    The defendant's election to kill must have been such as a reasonable man would have made in light of the danger to be apprehended.

<u>State v. Edwards</u>, supra at 413, citing <u>State v. Austin</u>, 332 N.W.2d 21, 24 (Minn. 1983), quoting in turn, <u>State v. Boyce</u>, 170 N.W.2d 104, 112 (Minn. 1969).

In addition, Minnesota law establishes that there is a duty to retreat, and to avoid danger if reasonably possible, and killing another is unjustified if the danger was reasonably avoidable.  See, <u>State v. Austin</u>, supra at 24; <u>State v. Johnson</u>, 719 N.W. 619, 629 (Minn. 2006)(listing elements of self-defense as: "(1) the absence of aggression or provocation on the part of the defendant; (2) the defendant's actual and honest belief that he or she was in imminent danger of death or great bodily harm; (3)

the existence of reasonable grounds for that belief; and (4) the absence of a reasonable possibility of retreat to avoid the danger."), quoting State v. Basting, 572 N.W.2d 281, 285 (Minn. 1997).

The Petitioner argues that the decision of the Court, in Bellcourt v. State, 390 N.W.2d 269 (Minn. 1986), supports his claim that a Jury Instruction on an aggressor's right to self-defense was not appropriate under Minnesota law. There, the Court found that the defendant, who was shot while he was holding several people at gunpoint, and then returned fire, and fled the scene, without first attempting to surrender, was not entitled to a self-defense instruction as no reasonable Juror could find that the defendant had attempted to withdraw prior to the use of deadly force. Id. at 272.

In contrast to Bellcourt, here, the Court determined that the Petitioner was entitled to a Jury Instruction on self-defense, and added the language from CRIMJIG 7.07 in order to allow the Jury to weigh the facts and made a determination as to whether the Petitioner had satisfied each of the requirements for the justification of self-defense which, in Minnesota, includes the lack of provocation on the part of the individual claiming the justification, and the duty to retreat, if possible, prior to the use of deadly force. In reaching its decision, the Minnesota Supreme Court examined the evidence of Record, and found that the Petitioner made a u-turn in the street, just

before the shooting, and that, at the time of the shooting, the Petitioner was in the driver's seat of a van that was stopped in the middle of the street with the engine running, and that driving conditions were good.  See, <u>State v. Edwards,</u> supra at 413. The Petitioner acknowledged that he had initiated a conversation with Oliver, and that, when Oliver approached the van he was on foot, and was standing approximately fifteen (15) feet from the van when he was shot.  <u>Id.</u>  Given those facts, we are unable to find that the decision of the Court to submit a Jury Instruction on an aggressor's duty to retreat was an affirmative misstatement of the law, such as would support a grant of a Writ of Habeas Corpus on Ground Two.

Finally, Section 2254 provides that a Writ of Habeas Corpus is also available in adjudications that resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.  See, <u>Title 28 U.S.C. §2254(d)</u>.  <u>Title 28 U. S.C. § 2254(e)(1)</u> retains a presumption of correctness for all purely factual determinations, which are rendered by a State Tribunal, and which can, as a result, only be rebutted by the production of clear and convincing evidence to the contrary.  See, <u>Lupien v. Clarke</u>, 403 F.3d 615, 618 (8th Cir. 2005); <u>Green v. Norris</u>, 394 F.3d 1027, 1029 (8th Cir. 2005); <u>Kinder v. Bowersox</u>, 272 F.3d 532, 538 (8th Cir. 2001), citing <u>Title 28 U.S.C. §2254(e)(1)</u>.

- 30 -

Although the Petitioner claims that the Court lacked sufficient evidence to justify the contested Jury Instruction, he has not introduced any evidence that would challenge the factual findings of the State Courts.  The Petitioner argues that, as the entire shooting took only a matter of seconds, he would not have been able to withdraw from the scene, and so was forced to defend himself.  However, State law provides that self-defense is only available in "the absence of aggression or provocation on the part of the defendant," State v. Johnson, supra at 629, and so, instructing the Jury that the Petitioner was not entitled to the justification of self-defense, if he "began or induced the incident that led to the necessity of using force" was not contradictory to the evidence of Record.

In sum, we find no merit to the claims contained in the Petitioner's request for Habeas relief, and we recommend that his Petition for a Writ of Habeas Corpus be denied in its entirety.

NOW, THEREFORE, It is  –

RECOMMENDED:

That the Petition for a Writ of Habeas Corpus [Docket No. 1] be dismissed with prejudice.

Dated:  March 24, 2008               *s/Raymond L. Erickson*
                                     Raymond L. Erickson
                                     CHIEF U.S. MAGISTRATE JUDGE

## NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and

D. Minn. LR72.2(b), any party may object to this Report and Recommendation by

filing with the Clerk of Court, and by serving upon all parties **by no later than April**

**10, 2008,** a writing which specifically identifies those portions of the Report to which

objections are made and the bases of those objections.  Failure to comply with this

procedure shall operate as a forfeiture of the objecting party's right to seek review in

the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a

Hearing, then the party making the objections shall timely order and file a complete

transcript of that Hearing **by no later than April 10, 2008,** unless all interested parties

stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the

transcript in order to resolve all of the objections made.